IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Respondent, | § | Civil Action No. |
| | § | 6:22-CV-023-AM |
| v. | § | |
| | § | Criminal Action No. |
| JUAN FRANCISCO TREVINO | § | 6:11-CR-189-(3)-AM |
| CHAVEZ | § | |
| Petitioner. | § | |

### MEMORANDUM IN SUPPORT OF RELIEF PURSUANT TO 28 U.S.C §2255

Petitioner submits this petition seeking 28 U.S.C. §2255 relief to vacate or reverse his conviction. Petitioner's prior counsel provided ineffective assistance at every stage of the proceedings, in contravention of the Sixth Amendment to the United States Constitution.

Prisoners in federal custody may collaterally attack their conviction under 28 U.S.C. § 2255(a). That section provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States…or is otherwise subject to collateral attack, may move the court which imposed a sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Mr. Trevino challenges his conviction on the ground that he did not receive effective assistance of counsel at trial, as required under the Sixth Amendment to the United States Constitution. Mr. Trevino asks the court to require a response from the United States and set a hearing on his Motion. Unless the Motion and "the records of the case conclusively show he is entitled to no relief, the court shall" call for a response and grant a hearing. 28 U.S.C. § 2255(b).

### I.    MOTION IS TIMELY FILED

Section 2255 motions must be filed within one year of the date on which the judgment of conviction became final. 28 U.S.C. § 2255(f). That one-year period begins to run on the latest of

several specifically enumerated events.  In this case, Mr. Trevino filed the Motion within one year of the date upon which the conviction became final when the United States Court of Appeals for the Fifth Circuit affirmed the decision of the Trial Court on 9 October 2020 and the decision was made not to file for certiorari with the United States Supreme Court, the time for which would have run ninety days after this holding.  This Motion, therefore, is timely.

## II.   THE CLAIMS RAISED ARE COGNIZABLE

Four types of claims are cognizable under Section 2255. 28 U.S.C. § 2255(a).   The ineffective assistance of counsel claims asserted here may be considered under two of those types: 1) the sentence was imposed in violation of the Constitution or laws of the United States and 2) the sentence is otherwise subject to collateral attack.  As to the first type, the Sixth Amendment to the U.S. Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel."  Courts have construed this provision to encompass effective assistance of counsel, and that ineffective assistance of counsel can give rise to a Constitutional violation claim. *Glover v. United States*, 531 U.S. 198, 203 (2001).

The second type of claim applicable here involves a "fundamental defect, which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (*quoting Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III.   THERE ARE NO PROCEDURAL BARS TO TREVINO'S CLAIMS FOR RELIEF

Courts usually will not entertain a § 2255 motion if the movant did not raise the claim before trial, at trial, or on direct appeal.  An exception to this general rule is that claims of ineffective assistance of counsel are not waived by the failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003); *United States v. Frady*, 456 US 152, 168

(1982); *McCleskey v. Zant*, 499 US 467, 493-94 (1991); *United States v. Skurda*, 341 F.3d 921, 928 (9th Cir. 2003) (challenge to ineffective assistance of counsel not waived by failure to raise on direct appeal).

## IV.   ARGUMENT

Petitioner claims: (1) Trial counsel failed to make even minimum preparation for trial; (2) trial counsel failed to object to critical hearsay testimony and failed to demand proper foundations for evidence presented by the Government that permitted unreliable and damaging evidence into the record of trial; and (3) trial counsel failed to object to improper propensity, reputation, and uncharged misconduct evidence offered by the government in lieu of evidence of the offense charged.

Petitioner was represented by attorneys Jose Salvador Tellez and Rogelio G. Rios, Jr. at trial. Petitioner entered a Not Guilty plea believing in his counsel's ability to zealously represent him at every stage of the proceedings in his trial. The two-part standard, articulated in *Strickland v. Washington,* 466 U.S. 688 (1984), for evaluating claims of ineffective assistance of counsel requires that the defendant show (1) counsel's performance must have been deficient and (2) the deficient performance must have prejudiced the defense by depriving the defendant of a fair trial. Counsel's performance at trial fell well below an objective standard of reasonable representation. Were it not for counsel's ineffective assistance of counsel and an accumulation of multiple errors during Petitioner's trial, the results of the proceeding would have been different.

The Petitioner believes that the poor preparation of counsel for trial and counsel's errors at trial were so grievous that these attorneys were not functioning as effective advocates for Petitioner as he is guaranteed by the Sixth Amendment to the United States Constitution. These failures on the part of trial counsel deprived the Petitioner of a fair trial.

## A.  INTRODUCTION

The specific charges on which Petitioner was convicted were Count 1: Conspiracy to Possess Marijuana with Intent to Distribute in violation of 21 U.S.C. §§841(a)(1) and 846; Count 2: Conspiracy to Import Marijuana with Intent to Distribute in violation of 21 U.S.C. §§952 and 960(a)(1); Count 3: unlawful distribution of controlled substances extra-territorial in violation of 21 U.S.C. § 959(a); Count 4: Conspiracy to Possess Cocaine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count 5: Conspiracy to Import Cocaine with Intent to Distribute in violation of 21 U.S.C. §§ 952 and 960(a)(1); Count 6: Conspiracy to Possess Firearms in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(o); and Count 7: Conspiracy to Launder Money in violation of 18 U.S.C. § 1956(h).

This conviction was obtained in violation of Mr. Trevino's Sixth Amendment right to effective assistance of counsel because the right to counsel means far more than simply having a counsel physically by one's side.  The citizen accused is entitled to effective representation.  He is entitled to a counsel who is "loyal', who "consult[s] with the defendant on important decisions", who "keep[s] the defendant informed of important developments in the course of the prosecution", and who "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing." *Strickland* at 688.  Recognizing, however, that the "overarching duty to advocate the defendant's cause" cannot be "exhaustively define[d]", the Court held that the touchstone for analyzing ineffectiveness claims is whether "counsel's assistance was reasonable considering all the circumstances."  Courts should look to "prevailing norms of practice" in assessing defense counsel's performance and make every effort to "eliminate the distorting effects of hindsight." *Id*. at 694.

*Strickland* established a two-part test for determining whether a defendant has been unconstitutionally deprived of counsel.  First, a defendant must show that counsel's performance "fell below an objective standard of reasonableness".  Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 697.  Those asserting claims of ineffectiveness of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.  The reviewing court must assess these allegations against professional norms such as the American Bar Association Standards for Criminal Justice (*id.*) and determine whether the counsel's performance worked to the defendant's prejudice.

### B.  BACKGROUND

Mr. Trevino is 41 year old citizen of the United States of America.  He attended high school in Laredo, Texas.  He is the father of three daughters.  At the time of his arrest, he was employed by Big Tex in Houston, Texas installing air conditioning units.

### 1.  The offense conduct as described in the evidence at trial

The evidence in this case established that Mr. Trevino has a name that is common in Mexico amongst certain cartel members, some of whom are relatives of his.  Based in part on this association, he was investigated and arrested on the above charges.  In the government's theory of the case, Mr. Trevino was a supplier and distributor for marijuana shipments from Mexico to the United States, through the region within the jurisdiction of the Western District of Texas.  Federal prosecutors sought to portray Mr. Trevino as a violent distributor of illegal narcotics between the two countries.   At his trial in July 2018, the government called convicted drug distributors to testify for the purpose of connecting Mr. Trevino with the importation and distribution of cocaine and marijuana by drug cartels. This theory of Mr. Trevino's culpability in this criminal enterprise

was based entirely upon testimony provided by witnesses cooperating with the government, in large part relaying information they claimed to have learned from others.

### 2.  Procedural History

Mr. Trevino was arrested on 28 September 2016 on a seven count indictment as follows: Count 1: Conspiracy to Possess Marijuana with Intent to Distribute in violation of  21 U.S.C. §§841(a)(1) and 846; Count 2: Conspiracy to Import Marijuana with Intent to Distribute in violation of  21 U.S.C. §§952 and 960(a)(1); Count 3: unlawful distribution of controlled substances extra-territorial in violation of 21 U.S.C. § 959(a); Count 4: Conspiracy to Possess Cocaine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count 5: Conspiracy to Import Cocaine with Intent to Distribute in violation of  21 U.S.C. §§ 952 and 960(a)(1); Count 6: Conspiracy to Possess Firearms in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(o); and Count 7: Conspiracy to Launder Money in violation of 18 U.S.C. § 1956(h).

A jury trial was held from 16 July 2018 through 24 July 2018.   Mr. Tellez and Mr. Rios acted as counsel to Mr. Trevino throughout the trial.   Mr. Trevino was found guilty on all seven counts.

### 3.  Trial

During trial, the prosecution presented the testimony of a number of convicted drug traffickers, and individuals awaiting sentencing for drug trafficking and for conspiracy to traffic drugs and money laundering.  Many of those witnesses were seeking to lessen their prospective sentences by cooperating with the government, seeking to better their own positions by testifying against others.

Defense counsel elected not to call any witnesses and rested after their failed Rule 29 motion to the Court.

### 4.   Sentencing and Appeal

Mr. Trevino was so upset over the ineffectiveness of counsel at his trial that he discharged Mr. Tellez and Mr. Rios as his advocates and hired present counsel to represent him.   At his sentencing hearing on 8 November 2018, Mr. Trevino received the following sentence: (Group 1) Life sentence as to Counts is and 2s to run concurrently with each other. (Group 2) Life sentence as to Counts 3s, 4s, and 5s to run concurrently with each other and consecutively to Group 1. (Group 3) 20 years as to Count 6s to run consecutively to Groups 1 and 2. (Group 4) 20 years as to Count 7s and Laredo case WA-17-CR-1165(01)-AM to run concurrently with Groups 1, 2, and 3 with credit for time served since 28 September 2016, pursuant to 18 U.S.C. 3584(a).  Following incarceration, he will be placed on five years of supervision on each count to run concurrently.

An appeal was timely filed with the Fifth Circuit Court of Appeals immediately after sentencing.   The Court of Appeals issued an opinion on 9 October 2020 holding that errors committed during the trial were harmless.

## C.  MR. TREVINO WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL.

### 1.   Mr. Tellez and Mr. Rios Provided Constitutionally Ineffective Counsel.

To establish deficient performance, a movant must show that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688).   This means a movant must show that (1) counsel's performance was outside the broad range of what is considered reasonable assistance and (2) this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).   In assessing if a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

Trial counsels' performance both pretrial and during trial became increasingly at odds with their function as advocates and fiduciaries of Mr. Trevino. In fact, Mr. Rios entered his appearance with the Court only four days before trial began, leaving him little to no time to even prepare for a case of this magnitude and complexity. As the trial progressed, this caused so much consternation with Mr. Trevino that counsel advised the judge he wished them to withdraw as counsel and felt he "would be better of representing himself". The Court questioned Mr. Trevino and discussed the issue with him at length prior to resuming the trial. (Sealed Bench Conference #67), (ECF 341 Trial Tr. at 1029-1043). Trial counsel's representation fell so far below that of what is considered reasonable assistance Mr. Trevino was gravely prejudiced in his ability to have effective assistance of counsel and a fair trial, and reversal of his conviction is required.

> **2.   During trial, counsel failed to adequately prepare for trial, failed to object to hearsay testimony and failed to demand proper foundations for evidence presented by the Government.**

Mr. Tellez and Mr. Rios' inadequate performance during the trial was evident in several ways. First, Mr. Rios was retained only four days prior to trial which did not allow for enough time for he and Mr. Tellez to prepare together to properly represent Mr. Trevino. This is addressed by the Court in the following excerpt:

> THE COURT: So it's been granted, Mr. Rios. I'll
> make sure that those jurors don't sit on this one.
> MR. RIOS:   I understand that, but what I'm -- as
> part of the -- of the reason to move this case to San
> Antonio –
> THE COURT: I've already ruled.
> MR. RIOS:   Yes, ma'am, but on the Rule 103 I can
> proffer –
> THE COURT: Rule 103 of what?
> MR. RIOS:   Federal -- here, Your Honor. Rule 103.
> THE COURT: Of which one? Of the rules of civil
> procedure? Criminal procedure or evidence?

MR. RIOS:      Yes, ma'am. Criminal procedure, Your
               Honor.

THE COURT: Of what?

MR. RIOS:      Let me see. One moment, Your Honor,
               please, with all due respect.

THE COURT: With all due respect, gentlemen, y'all
               should have put this in your written documents. This is
               a lack of respect to the Court and a lack of notice to
               be -- to be trying to raise this on different grounds
               than what your written motion was, Mr. Rios. This is a
               lack of respect and contemptuous behavior.

MR. RIOS:      I apologize to the Court for that.

THE COURT: So it's late.

MR. RIOS:      Well, if I may, the only reason we're
               introducing our 103 as proffered has been excluded is to
               preserve the error.

THE COURT: What proffer that's been excluded? I've
               got it. I told you I would keep it and put it in the
               record.

MR. RIOS:      But for -- you're going to include it for
               purpose of voir dire. We want to also include it for
               purposes of that the jury would be -- the demographics
               prove prejudice.

THE COURT: Counsel, you failed to put that in your
               written motion. So your motion is deficient and your
               raising it on oral motion today is untimely. It's a
               lack of notice to the parties. It's a late filing. We
               are way past pretrial motion filing and it's not in your
               written motion that you just filed Thursday afternoon.

MR. RIOS:      I understand that, Your Honor, but –

THE COURT: So all motions today are not welcomed by
               the Court.

MR. RIOS:      I understand that, but –

THE COURT: So why are you doing it?

MR. RIOS:      Because under Rule 103 anything that's
               excluded by the Court I can offer it by proffer if it
               would have been offered into evidence to preserve the
               error. And here the demographics –

THE COURT: The problem is you didn't preserve the
               error by not putting it in your motion to begin with,
               Mr. Rios. You should have preserved error by putting
               it in your motion.

MR. RIOS:      I understand the Court's position and I
               understand the ruling, but I still -- anything that's
               excluded I still –

THE COURT: You haven't offered anything.

MR. RIOS:      I have it here, Your Honor. I'd like to offer it Defense Exhibit No. 1 which is the exhibits. I know it's denied.

THE COURT: What exhibits?

MR. RIOS:      The exhibits of the demographics of the counties that are being used to get the jury panel, Your Honor.

THE COURT: Give it to me, Mr. Rios, but you're untimely.

MR. RIOS:      I understand that, Your Honor, and I understand –

THE COURT: And I'm going to tell y'all this, gentlemen. This Court is not going to tolerate late and last minute motions by the defense. If you think that's the way this Court works, then you haven't done your research on the Judge. We don't work that way. And this is a -- this case has been set for a long time. It's been set by this Court for a long time. We've gone back and forth with many things on this case. We're not doing it during this trial week. Do not even think that's going to happen, gentlemen. I will not tolerate it. This is the bottom line. Let's try this case. Let's get it over with and let's get it done. Y'all are not going to change the basis at the last minute. You didn't have it in your written motion. I have ruled on your written motion for a change of venue. None of this was in there. All of this in terms of the demographics was available to y'all before you filed your late motion on Thursday afternoon. This is not done. You don't get to play these games to try to get a last minute continuance, Mr. Rios, because if that's where we're headed, you're not getting a continuance. We're going to try this case. Are we clear?

MR. RIOS:      Yes, Your Honor, but –

THE COURT: Are we clear? Yes or no?

MR. RIOS:      In this matter –

THE COURT: Yes or no, Mr. Rios?

MR. RIOS:      Crystal.

THE COURT: Great.

(ECF 341 Trial Tr. at 11:4-14:25)

The Court also found Counsel was "grasping at straws" lacking in credibility in their representations requesting a continuance:

THE COURT: So this -- I get it, but these are last

minute expressions because y'all are grasping at straws
to get these cases continued. That's not working,
counsel. The Court doesn't find today's last minute
expression credible because this has never been
explained to the Court. I made a specific trip from Del
Rio to come take the plea in this -- in the Laredo case
and in this case when your client was first going to
plead guilty to both cases under 11(c)(1)(C). That was
the day he told me he didn't want to plead to the Waco
case, that he wanted a trial and I went through the
whole matter about the Rule 20 that it had to be a
plea -- repeatedly in this court and neither Mr. Tellez
nor Mr. Trevino who personally addressed the Court at
that time ever expressed any issues with any Rule 20
transfer. So today's first time expression is not
credible. Y'all better understand this last minute
stuff doesn't work. You don't get to give your word and
back out at the last minute because you don't like that
it's actually going forward.

(ECF 341 Trial Tr. at 27:7-28:1)

Additionally, multiple times throughout the trial witnesses for the Government provided

very prejudicial testimony that was inadmissible hearsay, yet trial counsel never objected to that

evidence, allowing it to be considered along with the weight of other proof in deliberations:

Q: What else did Milo tell you about Mr. Trevino?
A: He told me about several things they did.
Q: Okay.
A: On one occasion he told me -- well, I want to
   specify that Juan Francisco Trevino, Gerardo Trevino had
   certain privileges.
Q: What do you mean by that?
A: Since they are related to the Trevinos, they
   had more power than all the commanders -- all the
   commanders that commanded all the plazas. They didn't
   need to ask permission from Daniel Manera or the other
   commandantes that were back there back then either in
   Piedras Negras, Ciudad Acuna or in Nuevo Laredo.

(Direct Examination of Efren Tavira by AUSA Leachman)
(ECF 341 Trial Tr. at 304:9-21)

This testimony was entirely Mr. Tavira's recitation of what others told him.

In further testimony, Mr. Tavira responded to questioning with answers that were solely based on information gained from other sources that gave the impression of Mr. Trevino as a violent, vindictive man:

> Q: Okay. And so this -- did you go have a
> conversation with this Lupe about the use of this ranch
> or what happened?
> A: Yes. He said to me, you can go through there
> or you can go through anywhere you want. Just let me
> know. He said, we already took the ranch away from
> Lupe. So we told them once already to get out of the
> ranch. So then he didn't want to but he left but on one
> occasion he came back. And one of the sobrinos and
> Milo's workers was there. So Milo told me they had
> grabbed them and they let the sobrinos know. They
> nabbed them. They beat them up and they cut one of his
> ears off.
>
> (Direct Examination of Efren Tavira by AUSA Leachman)
> (ECF 341 Trial Transcript at 308:19-309:6)

Mr. Tavira continued to answer questions, without objection from counsel, giving information upon which he had no independent knowledge.  This hearsay evidence painted a picture for the jury of Mr. Trevino as a cartel leader.  Mr. Tavira did not have personal knowledge of these activities as he clearly stated in his testimony.

> Q: And did -- did Celso Perez-Martinez, did he
> move marijuana with the sobrinos?
> A: Yes.
> Q: What do you know about that?
> A: Celso told me personally.
> Q: What'd he tell you?
> A: That he was helping the sobrinos cross their
>  merchandise.
> (Direct Examination of Efren Tavira by AUSA Leachman)
> (ECF 341 Trial Tr. at 326:8-15)

Further, there were several occasions during which testimony was offered without foundation, yet there was no objection from either Mr. Tellez or Mr. Rios as to its admittance:

Q: Okay. Yesterday you identified a person that
   you told me you knew as Patillas. Do you remember that?

A: Patillas. Yes.

Q: And did you learn of an interaction between
   Patillas and another guy had with Mr. Trevino?

A: Yes. On one occasion Milo told me because we
   found out about everything that happened to Patillas.

Q: And what happened to Patillas?

A: On one occasion he told me he had had a
   confrontation with the sobrinos. And Patillas and one
   of Patillas' workers whose nickname was Roli. And they
   beat up this person. They beat him up and they beat him
   up until they left him on the ground unconscious. He
   was in a coma for about a month. And his worker whom I
   saw later on had a big cut here on what -- the top of
   the head.

Q: Was the worker Roli? The person you identified
   as Roli?

A: Yes. They did not kill Patillas because he
   also worked for other people for the cartel. But they
   left him completely unconscious and it was through an
   order of the sobrinos.

Q: Okay. And what happened to him and where did
   this occur, if you know?

Q: I just remember that Milo told me that was in
   a -- at a -- at a bar or outside a bar.

Q: And who was it that administered the beating to
   these two men?

A: Milo was there and Milo told me he took part in
   the fight too.

Q: Okay. Who else?

A:  The workers, the sicarios.

Q: Okay. And what about the defendant or his
   brother?

A: Yes.

(Direct Examination of Efren Tavira by AUSA Leachman)
(ECF 341 Trial Tr. at 310:16- 311:25)

Q: What was it that Gordo Ferrari did for Kiko?

A: They would keep the marijuana for him and they
   would sell it.
   (Direct Examination of Juan Guzman by AUSA Kucera)
   (ECF 341 Trial Tr. at 441:14-16)

Q: In November of 2008 when these houses were
    raided did you have individuals that were utilizing
    those locations for stash houses?
A: Yes. I did.
Q: And who were those individuals?
A: I know aliases. I don't know exact names.
Q: That's fine. Can you -- for purposes of the
    record can you state what those aliases are?
A: I knew individual by the name of Kiko, Hector,
    Gordo. That'd be it.
Q: And, sir, you said you only know aliases. In
    the narcotics business is that customary to only know
    somebody's alias?
A: Yes. It is.

(Direct Examination of Gustavo Atencio by AUSA Kucera)
(ECF 341 Trial Tr. at 466:8-21)


Q: As far as the individual that you knew as Kiko,
    you didn't know any other identifiers as far as Kiko?
A: In what aspect?
Q: You didn't know a last name or anything about
    who Kiko was?
A: I knew his last name was Trevino.
MR. TELLEZ: Objection. Asked and answered already.

(Direct Examination of Gustavo Atencio by AUSA Kucera)
(ECF 341 Trial Tr. at 469:11-17)

There were also no objections from either counsel to the government leading its witnesses

on direct examination. Instead, leading by government counsel was done with impunity without

objection from Petitioner's counsel.

Q: And the transactions that we've described were
    all done with the Zeta drug cartel; is that correct?
A: Other cartels as well. It's the same –
Q: But I'm talking about just -- right now I'm
    just talking about the 30,000 kilos.
A: Yes.
Q: And all of those 30,000 kilos were initiated
    when Mr. Trevino brought you the phone and started that
    up; is that correct?
A: That's correct

> Q: And subsequent to that he was the person either
>    personally bringing you the cocaine or responsible for
>    directing other people to bring you the cocaine until
>    you get arrested in 2009; is that correct?
> A: That's correct.
>
> (Direct Examination of Mark Rodriguez by AUSA Leachman)
> (ECF 341 Trial Tr. at 648:16-649:5)
>
> Q: You've known this family for over 22 years?
> A: Yes.
> Q: When you talked to the agents back in 2009 and
>    told them who sent you this dope, did you tell them who
>    it was?
> A: Yes.
> Q: And did you tell them it was Kikillo and Jose
>    and Omar and Miguel?
> A: Yes.
>
> (Direct Examination of Mark Rodriguez by AUSA Leachman)
> (ECF 341 Trial Tr. at 661:4-12)

At one point, Mr. Tellez did object to hearsay, however, the prosecution responded with a

Federal Rule of Evidence which does not exist, and trial defense counsel failing to point this out,

the Court permitted the statements over objection.

> MR. TELLEZ:        Objection as to hearsay on that one,
>                    Your Honor.
> THE COURT:         Okay. Mr. Leachman?
> MR. LEACHMAN:      Your Honor.
> THE COURT:         Yes, sir.
> MR. LEACHMAN:      Your Honor, it's a message sent
>                    directly from the cartel.
> THE COURT:         Okay. What's your response under the rule?
> MR. LEACHMAN:      It's 801(d)(3), Your Honor.
> THE COURT:         Okay. You may interpret the statement.
> BY THE WITNESS:
>         A:         Zeta Cuarenta delivered him to the guys from
>                    the Golfo.
>
> (Direct Examination of Luis Carreon by AUSA Leachman)
> (ECF 341 Trial Tr. at 718:17-719:5)

Counsel's failure to object to the admission of hearsay testimony, speculative statements, and evidence presented to the jury without proper foundation, as well as extensive leading by the prosecution fell well below an objectively reasonable standard of representation.

>    **3.  Trial counsel permitted the government to put on testimony of Mr. Trevino's reputation and family associations instead of direct evidence as to the crimes charged.**

Trial counsel failed to present a memorandum of law or move in limine prior to trial to preclude this testimony, nor did they object to this evidence at trial under Fed. R. Evid. 403, 404, and 405. It began in the opening statement when Mr. Leachman informed the jury, "You're going to hear about acts of violence too. You're going to hear about how that is part of the cartel's business and why it is necessary in order to have control." (ECF 341 Trial Tr. at 204:19-22.) This began the trial with the jury being informed that Mr. Trevino was not just suspected of being part of the conspiracy, but also being involved in acts of violence and other crimes. In the direct examination of Efren Tavira by AUSA Leachman he testified to the "power" of the Trevinos, stating they had "more power than all the commanders". (ECF 341 Trial Tr. At 304:9-21.) And in further testimony by Mr. Tavira to the violent tendencies of Mr. Trevino as one of the "sobrinos" which was both propensity and hearsay when he told the jury, "So Milo told me they had grabbed them and they let the sobrinos know. They nabbed them. They beat them up and they cut one of his ears off." (ECF 341 Trial Tr. at 309:6.) This occurred again later in Mr. Tavira's testimony:

> Q: Okay. Yesterday you identified a person that
>    you told me you knew as Patillas. Do you remember that?
> A: Patillas. Yes.
> Q: And did you learn of an interaction between
>    Patillas and another guy had with Mr. Trevino?
> A: Yes. On one occasion Milo told me because we
>    found out about everything that happened to Patillas.
> Q: And what happened to Patillas?

A: On one occasion he told me he had had a
   confrontation with the sobrinos. And Patillas and one
   of Patillas' workers whose nickname was Roli. And they
   beat up this person. They beat him up and they beat him
   up until they left him on the ground unconscious. He
   was in a coma for about a month. And his worker whom I
   saw later on had a big cut here on what -- the top of
   the head.

Q: Was the worker Roli? The person you identified
   as Roli?

A: Yes. They did not kill Patillas because he
   also worked for other people for the cartel. But they
   left him completely unconscious and it was through an
   order of the sobrinos.

Q: Okay. And what happened to him and where did
   this occur, if you know?

Q: I just remember that Milo told me that was in
   a -- at a -- at a bar or outside a bar.

Q: And who was it that administered the beating to
   these two men?

A: Milo was there and Milo told me he took part in
   the fight too.

Q: Okay. Who else?

A:  The workers, the sicarios.

Q: Okay. And what about the defendant or his
   brother?

A: Yes.

(Direct Examination of Efren Tavira by AUSA Leachman)
(ECF 341 Trial Tr. at 310:16-311:25)

Rule 403 states: Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the direct examination of Gustavo Rodriguez by Mr. Leachman, Mr. Rodriguez was asked what would happen if, while at a bar, the people who worked there did not do as Mr. Trevino desired.  He responded that if, for example the bartender did not want to serve Mr. Trevino drinks, the bartender would be beaten, or if "the girls didn't want to come see" Mr. Trevino, they would

be taken by force. (ECF 341 Trial Tr. 962:16-20.)  This occurred again when Mr. Rodriguez was

asked by Mr Leachman about the alleged authority of Mr. Trevino:

> Q: Okay. Who has higher rank in the cartel at the
>    time you were sicario, Mr. -- or Enano or Mr. Trevino?
> A: Mr. Trevino.
> Q: And as such do you, even though you work for
>     Enano, have to follow the orders of Mr. Trevino?
> A: Yes.
> Q: And what would happen to you if you didn't
>    follow his orders?
> A: He would kill me.
> Q: And is that true for anyone detailed to him
>    that's a sicario?
> A: Yes, because if you do not accept an order
>    you're being given, they're really going to beat you up
>    real quick. They're going to torture you or they're
>    going to kill you.
>
> (Direct Examination of Gustavo Rodriguez by AUSA Leachman)
> (ECF 341 Trial Tr. at 965:25-966:14)

Cases construing Rule 403 hold that the trial court must make findings on the record that

the probative value is substantially outweighed the prejudicial nature of the testimony. *United

States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989). The above questioning showed that Mr.

Rodriguez had no personal knowledge of Mr. Trevino's alleged outrageous conduct, and the

testimony was only offered to bolster the government's portrayal of Mr. Trevino as an evil man,

with no connection to the charged crimes.  There was no probative value to balance against the

egregious prejudice fostered by the government in this hearsay evidence.

> Rule 404: Character Evidence; Other Crimes, Wrongs, or Acts
> . . .
>   (b) Other Crimes, Wrongs, or Acts.
>      (1) *Prohibited Uses*. Evidence of any other crime, wrong, or act is not
>   admissible to prove a person's character in order to show that on a particular
>   occasion the person acted in accordance with the character.
>      (2) *Permitted Uses*. This evidence may be admissible for another purpose,
>   such as proving motive, opportunity, intent, preparation, plan, knowledge,
>   identity, absence of mistake, or lack of accident.

(3) *Notice in a Criminal Case.* In a criminal case, the prosecutor must:
(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
(C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Evidence in violation of the prohibition of FRE 404(b)(1) was offered repeatedly by the government throughout the questioning of several witnesses, in addition to Mr. Rodriguez, and there were no objections by trial defense counsel to these patently inadmissible statements.  The admissibility of other acts of evidence is addressed in *Huddleston v. United States*, 485 U.S. 681 (1988) and a four-part test explained in *United States v. Garcia-Orozco*, 997 F.2d 1304 (9th Cir. 1993): 1) the prosecution must articulate its evidentiary hypothesis, *United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir. 1982); 2) the prior act must be logically connected to an issue in the present case, *United States v. Hernandez-Miranda*, 601 F.2d 1104 (9th Cir. 1979); 3) the accused must be shown to be the perpetrator of the other act, *United States v. Gilan*, 967 F.2d 776 (2d Cir. 1992); 4) the specific purpose for the evidence must be identified and the jury so instructed, *United States v. Sampson*, 980 F.2d 883 (3d Cir. 1992).

The prosecution was never held to the standard stated in *Huddleston*, nor did trial counsel make any attempt to limit the jury's consideration of this evidence. Thus, Mr. Trevino stood trial for drug related charges and conspiracy with the foundation being evidence that should never have been allowed in and which focused on rumors of his tendency or reputation for violent behavior from prosecution witnesses.

Mr. Tellez and Mr. Rios failed to present a memorandum of law or move in limine prior to trial to preclude this testimony, or at the very least to object and request a curing statement when

this improper and highly prejudicial "evidence" was offered. The jury received a grotesque portrait of Mr. Trevino by allowing in out of court statements which did not establish the conduct charged but were instead a play on the part of the government to place the focus on Mr. Trevino's alleged violent tendencies and rumored cartel involvement.  If trial defense counsel had even made basic evidentiary objections on the record, the outcome of the trial would have been much different.

### D.  THE SIXTH AMENDMENT VIOLATION PREJUDICED MR. TREVINO AND HE IS ENTITLED TO HAVE HIS CONVICTION VACATED.

A defendant who is subject to a complete failure to provide adequate representation and preparation for his case and for trial is entitled to be placed in the position he would have been in but for the ineffective assistance of counsel. *Boria v. Keeane*, 99 F. 3d 492, 499 (2nd Cir. 1996); *Nunes v. Mueller*, 350 F 3d 1045 at 1057 (9th Cir. 2003) (stating that "[c]onceptually, any habeas remedy 'should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred,' and in some circumstances granting a new trial is not the appropriate remedy to that end." (citing *Blaylock*, 20 F.3d at 1468); *United States ex. Rel Caruso v. Zelinsky*, 689 F2d 435 (3rd Cir. 1982); *Martinez v. Felker*, 2009 WL 393166, 19 (C.D. Cal. Feb. 13, 2009)).  Similarly, a defendant whose trial counsel has failed to investigate a defense is entitled to be placed in the position that he would have been had the defense been adequately investigated. See *Dando v. Yukins,* 461 F.3d at 802 (granting habeas remedy and remanding for trial where guilty plea was the result of inadequate investigation of defense).  When trial counsel's failure to render effective assistance of counsel is done without any rational justification or excuse, a defendant should be "put in the same position he would have been in if he had had effective assistance of counsel." *Hodge v. United States*, 554 F.3d 372,381-82 (3d Cir. 2009).

The prosecution's case was built upon inference, hearsay, and the testimony of accomplice, lacking in direct evidence.  The case largely rested on the testimony of incarcerated and/or former cartel members seeking to better their positions with the prosecutors and the Court in anticipation of reducing their own sentences.  Even so, the testimony between them was inconsistent and based on hearsay within hearsay.  Two witnesses, Mark Rodriguez and Mr. Atencio, could not identify Mr. Trevino in the courtroom.

During the time Mr. Trevino was identified by those witnesses as being a part of the "conspiracy", he was serving 36 months of probation in Laredo, Texas.  He could not leave the jurisdiction of the Court and be in Mexico to accomplish the acts the government's witnesses accused him of carrying out.  These significant fatal defects in the government's case; guilt imputed by propensity, reputation, and hearsay, were the heart of the government's evidence.  Trial defense counsel's failure to prepare, object, or seek curative instruction was not a matter of strategy or tactics, but a failure to be properly prepared.

On this record, the combination of errors committed by trial counsel failed to present a coherent defense and failed to identify to the jury the many reasonable doubts to find Mr. Trevino not guilty of the charged offenses.  The result in this case would have been different but for the lack of preparation of counsel, their ineffective advocacy at trial, and their inability to communicate effectively to the trial judge.  Counsel's performance was so deficient that it created an actual conflict between him and his counsel during trial, as seen on the record, and their ineffective performance was on display each day before the factfinder.  The failures of counsel in trial preparation and at trial fell below any objective standard of effective assistance of counsel.

## V.    CONCLUSION

For all these reasons, Mr. Trevino requests that his convictions and sentences be vacated because he was denied his Sixth Amendment right to counsel.

Respectfully Submitted,

*/s/ Patrick J. McLain*

Patrick J. McLain
Attorney for Defendant Trevino
Texas State Bar Number: 13737480
900 Jackson Street, Suite 635
Dallas, Texas 75202
Telephone: (214) 416-99100
patrick@patrickjmclain.com

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of Defendant Trevino's Memorandum in Support of Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C §2255 was served electronically via the CM/ECF system to Assistant United States Attorneys Mary Kucera, Russell Leachman, Jennifer Sheffield Freel, and Joseph H. Gay 14 January 2022.

*/s/ Patrick J. McLain*

Patrick J. McLain
Attorney for Defendant Trevino